IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ANTOINETTE MCDOWELL, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-2096-L |
| | § | |
| MERCEDES-BENZ USA, LLC PENSION PLAN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss First Amended Complaint Pursuant to F.R.C.P. 12(b)(6) (Doc. 17), filed October 17, 2016. After careful consideration of the motion, response, reply, pleadings, and applicable law, the court **denies** Defendant's Motion to Dismiss First Amended Complaint Pursuant to F.R.C.P. 12(b)(6).

**I.   Factual and Procedural Background**

Antoinette McDowell ("Plaintiff" or "McDowell") filed this action on July, 19, 2016, against Mercedes-Benz USA L.L.C. Pension Plan ("Defendant"). On September 8, 2016, Plaintiff filed her Amended Complaint ("Complaint") against Mercedes Plan seeking to recover pension benefits under a plan (the "Plan") governed by the Employee Retirement Income Security Act ("ERISA") and a claim for ERISA estoppel. Defendant contends that Plaintiff's Complaint should be dismissed because she failed to state a claim upon which relief can be granted. In particular, Defendant contends that the Pension Plan Committee's (the "Committee") determination was reasonable and that Plaintiff does not substantively challenge the reasonableness of the Plan. With respect to Plaintiff's cause of action for estoppel, Defendant contends that Plaintiff's claim fails as

a matter of law because she cannot seek recovery based on estoppel by means of a claim brought under ERISA §502(a)(1)(B).

Plaintiff counters that there is a "question of fact"[1] as to whether the Committee ever reviewed or made a determination on Plaintiff's claim for benefits, and she calls into question the reasonableness of the ultimate denial of benefits under the Plan.

## II.     Rule 12(b)(6) Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading

---

[1] As the court only deals with the sufficiency of allegations on a 12(b)(6) motion, it takes Plaintiff's statement to mean that she has adequately set forth a claim to relief beyond the speculative level, and the court must view the allegations in the light most favorable to her at this juncture, as questions of fact deal with motions for summary judgment under Federal Rule of Civil Procedure 56.

do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record."' *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."

*Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III. Analysis

### A. Abuse of Discretion Claim

#### 1. *Plaintiff's Allegations Regarding ERISA § 502 (a)(1)(B)*

The court now sets forth Plaintiff's allegations regarding her claims against Defendant. Plaintiff asserts as follows:

> 5. Plaintiff worked for Mercedes-Benz USA ("MBUSA") for some 29 years.
> 6. Plaintiff was a participant in the Plan who became eligible for participation upon satisfaction of the Minimum Service Requirements, as set for in Article II (2) of the Plan. Further, Plaintiff has vested in retirement benefits under the Plan pursuant to Article II (3)(A).
> 7. Plaintiff had reached her Early Optional Retirement Date under Article II (5)(C) of the Plan and therefore was entitled to receive accrued pension benefits under the Plan upon retirement, as calculated under Article II (6) of the Plan.
> 8. In September of 2015, as a result of a project she was working on with the parent company, Daimler, she accepted a position with Daimler Trucks North

America ("DTNA"), a separate Daimler entity that does not participate in the Plan and requested early retirement under Article II. The possibility of Plaintiff retiring from MBUSA and accepting employment with DTNA had been discussed since December 2014, and per Plaintiff's discussions with both DTNA and MBUSA, all parties anticipated that upon the retirement of her employment with MBUSA to take the new position, Plaintiff would begin collecting her retirement benefits under the Plan.

9. Lucy Marrero, then the Coordinator for Employee Benefits for MBUSA, confirmed Plaintiff's eligibility to receive pension benefits under the Plan in a December 18, 2014 email to Plaintiff, in which she plainly stated: "Your employment with DTNA will not impact your MBUSA Pension benefit since you are already in the MBUSA Pension Plan, vested and entitled to receive a benefit because you already met the rule of 80. Also, DTNA does not participate in the MBUSA Pension Plan, so your service with DTNA will not impact your MBUSA Pension Plan benefit." Ms. Marrero never stated that she was not authorized to give such an opinion, nor that her opinion would need to be reviewed or ratified by anyone else.

10. After Plaintiff accepted the position with DTNA based upon her understanding of her pension eligibility, she confirmed her eligibility to receive benefits under the Plan in another chain of emails with Ms. Marrero, who reaffirmed this on September 15, 2015: "I do not see a reason why you cannot collect your MBUSA Pension Plan benefit and work for DTNA – they are not in our pension plan."

11. Anthony LaSpada of MBUSA's legal department, then abruptly reversed course. He sent an email the same date, saying that he would need to discuss this with Plaintiff because it "requires a factual determination… a transfer or legitimate termination and rehire within controlled-group." His interpretation was based on material not included in the Plan, including his interpretation of IRS regulations and opinion letters.

12. Plaintiff continued to press MBUSA for an answer. Valerie Ross, the new Manager of Compensation and Benefits for MBUSA, told her by phone on September 18, 2015 that she was not eligible to collect benefits. She clarified this in a subsequent email, referring to "Page 10 of the Plan", and concluding: "This is clearly considered a transfer from an Affiliate and not a retirement." Consequently, Defendant denied Plaintiff's request for retirement benefits under the Plan.

13. The impact of MBUSA's re-interpretation of the Plan has a significant negative impact on Plaintiff. Not only does Plaintiff not collect her monthly benefit, but she must pay more for medical benefits, she loses the employee Mercedes-Benz purchase benefit, and she does not have access to her 401(k) funds.

14. Plaintiff honored her commitment to accept a position with DTNA, as had been discussed for some 10 months previously. Plaintiff appealed Ms. Ross's decision denying her benefits to the Pension Plan Committee, which denied her appeal.

Pl.'s Original Compl. ¶¶ 5-14.

## 2. The Parties' Contentions

Defendant argues that the Plan administrator's determination was, at minimum, reasonable and, therefore, cannot be overturned.[2] The Plan provides that the Committee is responsible for the administration of the Plan and that the Committee "shall have the exclusive power and discretion to make determinations of all questions arising out of or in connection with the interpretation, application, or administration of the Plan . . . including, but not limited to, interpretation, and construction of the terms of the Plan." Def.'s Mot. to Dismiss 6. Moreover, "the discretion granted to the Pension Plan committee includes full authority to determine 'all questions both legal and factual relating to the eligibility of Employees to become Participating Employees and beneficiaries for benefits hereunder.'" *Id.* Article 1, Section 7 of the Plan states that "no benefit shall become due and payable to a Participating Employee covered hereby while he remains in the status of an Employee, as defined in Section 12 of Article 1." *Id.* Defendant contends that the Committee correctly interpreted the terms "Employee" and "Company," under the Plan and determined that Plaintiff was not entitled to pension benefits "if after leaving MBUSA and taking her new position with DTNA, she nonetheless remained an 'Employee' for purposes of the Plan." Def.'s Mot. Dismiss 8.

Defendant argues that the Plan provides that the term "Employee" includes "each person now or hereafter employed by the *Company*." *Id*. (emphasis added). The Committee found that treasury regulations should control the definition of "Company" for the purposes of determining whether Plaintiff would be entitled to benefits under the Plan. *Id.* Defendant contends that Treasury regulations "required treating the 'Company' as all business entities that are part of the

---

[2] Plaintiff referred to the terms of Defendant's Plan in her Complaint, and Defendant attached the Plan to its motion. As the Plan is central to Plaintiff's ERISA claim, the court will consider the attached Plan as part of the pleadings.

**Memorandum Opinion and Order - Page 6**

same controlled group under the tax code." *Id.* The Committee determined that this interpretation was required to maintain the tax-qualified status of the Plan. *Id.* Based upon that determination, the Committee determined that MBUSA and DTNA are part of the same "Company" for the purposes of Plaintiff's benefits claim under the Plan. Accordingly, under the Committees' interpretation, Plaintiff remained an employee of the "Company" for purposes of the Plan "even while switching from working for MBUSA to working for DTNA, because both MBUSA and DTNA constitute part of the 'Company'" under federal tax law. *Id.* at 9.

Further, the Defendant contends that Article 1, Section 22 of the Plan "expressly precludes pension benefits from being triggered merely by an employee's movement from one affiliated employer to another." *Id*. This provision of the Plan provides that termination of employment for purposes of the Plan is "termination on account of retirement, and "[an] Employee shall not be deemed or otherwise regarded as having incurred a termination of employment if he is transferred to an Affiliate, whether or not [that Affiliate] is participating" in the Plan. *Id*. The Plan provides that an "Affiliate" is "any corporation or trade or business" under common control or part of a controlled group of corporations, including MBUSA, for the purposes of the Internal Revenue Service. *Id.* Accordingly, Defendant contends that because Plaintiff left MBUSA to work for DTNA, she merely left employment with one "Affiliate" to start employment with another "Affiliate." *Id*.

Plaintiff argues that she has stated a claim upon which relief can be granted, and Defendant's motion should be denied. Specifically, Plaintiff responds that the allegations of her complaint question whether the Plan Committee ever reviewed or made a determination on Plaintiff's claim for benefits and whether the denial of benefits under the Plan was reasonable. Plaintiff alleges that Defendant's interpretation of the Plan with respect to her benefits claim

conflates the definition of "termination of employment," and Defendant's interpretation of a "controlled group of corporations" is improper.

### 3. ERISA § 502 (a)(1)(B)

If a person is denied benefits under an employee benefit plan governed by ERISA, such person may challenge that denial in federal court "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 346 (5th Cir. 2016) (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108). To maintain a claim under Section [§ 502 (a)(1)(B)], the claimant must show that he or she "qualif[ies] for the benefits provided in that plan." *Id.* at 348. When an ERISA plan contains an express grant of discretion to the plan administrator to interpret and apply the terms of the plan, its decision is reviewed under an abuse of discretion standard. *Gomez v. Ericsson, Inc.*, 828 F.3d 367 (5th Cir. 2016); *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 346 (5th Cir. 2016). The administrator's interpretation is generally evaluated under a two-step analysis. *See Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004). "First, [a court] must determine whether the administrator's interpretation was legally correct. If so, [the] inquiry ends. If not, [a court] must determine whether the administrator's interpretation was an abuse of discretion." *Singletary*, 828 F.3d at 347 (citations omitted).

In determining whether an interpretation was legally correct, a court must consider: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Gomez*, 828 F.3d at 373-74 (citing *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 258 (5th Cir. 2009)). "[A] court, however, is not limited to this

test and may skip the first step if it can 'readily determine that the decision was not an abuse of discretion.'" *Corbello v. Sedgwick Claims Mgmt. Servs.*, Inc., 856 F. Supp. 2d 868, 881 (N.D. Tex. 2012) (quoting *Holland v. International Paper Co. Ret. Plan*, 576 F.3d 240, 251 n.2 (5th Cir. 2009). A plan administrator abuses its discretion when its decision is arbitrary or capricious, and the decision is not based on evidence that supports the basis for its denial. *Singletary*, 828 F.3d at 347 (citations omitted). "Ultimately, [a court's] review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Id.* (citation omitted) (internal quotation marks omitted).

      *4. Discussion*

Plaintiff has stated a claim upon which relief may be granted. To state a claim upon which relief can be granted under § 502(a)(1)(B), Plaintiff must plead sufficient facts that show she qualifies for benefits under the Plan. *Singletary,* 828 F.3d at 348. In this regard, Plaintiff has sufficiently pled facts that show she was an eligible participant in the Mercedes Plan who satisfied the minimum service requirements set forth under Article II of the Plan. Based upon these allegations, the court concludes that Plaintiff has set forth sufficient facts to show she qualifies for benefits under the Plan, and Defendant could be liable for the conduct alleged in her Complaint.

Defendant further argues that the Committee determined that treasury regulations controlled the definition of "Company" for purposes of determining Plaintiff was not entitled to recover benefits under the Plan. Also, Defendant contends that the Plan expressly provides that "termination of employment" for purposes of the Plan is "termination on account of retirement" only. The pleadings, however, lack the allegations necessary to support the basis for the Committee's denial of benefits, and the court may not consider matters outside the pleadings. The

court cannot make a determination of reasonableness at this juncture. A further development of facts is necessary to determine the reasonableness of the Committee's interpretation of the Plan and whether Defendant abused its discretion in denying Plaintiff benefits under the Plan. At the pleadings stage, the court only tests the adequacy of the allegations, not whether a party will ultimately prevail. Therefore, the court determines that the allegations of Plaintiff's complaint raise a plausible claim beyond the speculative level.

### B. Estoppel Claim

Defendant argues that Plaintiff's cause of action for estoppel fails as a matter of law and should be dismissed. Defendant contends that, because Plaintiff never specifically alleged a claim for recovery on the basis of estoppel under ERISA § 502(a)(3), she must be relying on § 502(a)(1)(B). According to Defendant, "a plan participant cannot seek recovery based on estoppel by means of a claim brought under ERISA § 502 (a)(1)(B)." Def.'s Mot. to Dismiss 12. (citing *Singletary,* 828 F.3d at 348). Plaintiff did not respond to Defendant's argument concerning her estoppel claim.

Plaintiff's Complaint has not specified under which part of § 502 section she alleges a claim for equitable estoppel, and as Defendant points out, a court "has no authority under [ERISA § 502 (a)(1)(B)] 'to change the terms of the plan as they previously existed,' [because] it only allows enforcing a plan's provisions." *Singletary,* 828 F.3d at 349 (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 435 (2011)). To set forth an ERISA estoppel claim under § 502(a)(3), however, a plaintiff must set forth allegations that show: "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005) (citations omitted).

Plaintiff has set forth facts from which a court could reasonably infer that Defendant would be liable for a claim under § 502(a)(3). Plaintiff alleges that: (1) Defendant made material misrepresentations to her regarding interpretation of the terms of the Plan; (2) she reasonably relied upon Defendant's representations to her detriment and; (3) extraordinary circumstances exist, because she was denied benefits under the plan and she does not have access to her 401(K) funds. Pl.'s Original Compl. ¶¶ 22-25. Under § 502(a)(3), Plaintiff's claim does not fail as a matter of law. Although Plaintiff did not specify under which part of § 502 she alleges a claim for equitable estoppel, it is clear to the court that Plaintiff has set forth facts that allege a claim under § 502(a)(3) and not § 502(a)(1)(B) as Defendant contends. Accordingly, Plaintiff has stated a claim upon which relief could be granted, and the court will not dismiss Plaintiff's estoppel claim against Defendant.

### IV. Conclusion

For the reasons herein stated, the court **denies** Defendant's Motion to Dismiss First Amended Complaint Pursuant to F.R.C.P. 12(b)(6).

**It is so ordered** this 30th day September, 2017.

*[signature]*
Sam A. Lindsay
United States District Judge